UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| FAYE MILLER, et al., | ) | |
|---|---|---|
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.: 3:09-CV-85 |
| | ) | (VARLAN/SHIRLEY) |
| MONROE COUNTY, TENNESSEE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on defendants Karen Chapman, R.N. and Southern Health Partners, Inc.'s Motion to Dismiss [Doc. 21] in which defendants move the Court for an order dismissing any medical malpractice claims for failure to comply with the requirements of the Tennessee Medical Malpractice Act, T.C.A. §§ 29-26-115, *et seq*. Plaintiffs have not responded to the motion to dismiss and the time for doing so has passed. *See* E.D. TN L.R. 7.1(a), 7.2.

**I.    Facts**

The following factual allegations arise from a time period in which plaintiffs' decedent, Trena Miller ("Miller"), was a state prisoner at the Monroe County jail [Doc. 1, ¶ 9]. Defendant Karen Chapman ("defendant Chapman") is a nurse and an employee of defendant Southern Health Partners, Inc. ("defendant Southern") [*Id.*, ¶ 7]. Defendant

Southern is under contract with Monroe County[1] to provide medical services for the Monroe County Sheriff's Department [*Id.*].

Plaintiffs allege that Miller had a history of heart problems that were well known to "all Defendants on the records of the Monroe County jail and Southern Health Partners, Inc." [Doc. 1, ¶ 9]. On February 28, 2008, at approximately 3:30 A.M., plaintiffs allege that Miller told jail personnel she was experiencing chest pain [*Id.*, ¶ 10]. Plaintiffs allege that no one came to her assistance [*Id.*]. At approximately 6:10 A.M., plaintiffs allege that Miller told Officer Samantha Hampton ("Officer Hampton")[2] that she had vomited and was still experiencing chest and neck pain and pain in her left arm [*Id.*, ¶ 11].

Plaintiffs allege that no medical assistance was called until defendant Chapman came on duty at 8:15 A.M., at which time she was advised of Miller's problems [Doc. 1, ¶ 12]. Plaintiffs allege that defendant Chapman examined Miller and administered her anxiety medicine, as directed by her supervisor at defendant Southern [*Id.*]. Defendant Chapman then left Miller in the care of Officer Hampton [*Id.*]. Plaintiffs allege that shortly thereafter, Miller began vomiting and experiencing pain and, in response, defendant Chapman called her supervisor at defendant Southern [*Id.*]. A short time later, plaintiffs allege that Miller stopped breathing and went into cardiac arrest, at which time defendant Chapman began

---

[1] Monroe County is also a defendant in this action.

[2] Officer Samantha Hampton is also a defendant in this action.

cardiac pulmonary resuscitation and told jail personnel to call an ambulance [*Id.*]. Shortly thereafter, Miller died [*Id.*, ¶ 8].

Thus, plaintiffs assert, pursuant to the "wrongful death statutes of the state of Tennessee," all defendants knew Miller had a history of heart problems and knew she was suffering from symptoms of a heart attack, but failed to properly diagnose and treat Miller in accordance with the applicable standard of care, resulting in her wrongful death [Doc. 1, ¶¶ 1, 9-14]. In response, defendants assert that several of plaintiffs' claims, as applied to defendant Southern and its employee, defendant Chapman, fall within the scope of the Tennessee Medical Malpractice Act and should be dismissed for failure to comply with the applicable procedural requirements.

## II.     Analysis

### A.     Standard of Review[3]

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) operates to test the sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6). The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. *Ashcroft v. Iqbal*, — U.S. —, —, 129 S. Ct. 1937, 1950 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at

---

[3] Defendants have not stated the appropriate standard of review for this motion to dismiss. However, upon the Court's review of the complaint and the motion to dismiss, the Court determines that the appropriate standard of review to be applied to this motion is the standard applicable to a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6).

1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a plaintiff's obligation to provide the grounds of [his or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Although the court must accept all well-pleaded factual allegations of a complaint as true for purposes of a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation."*Id.*

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).

### B. The Tennessee Medical Malpractice Act

Plaintiffs did not plead this action as a claim under the Tennessee Medical Malpractice Act. However, medical malpractice is but a particular type of negligence. *Gunter v. Laboratory Corp. of America*, 121 S.W.3d 636, 639 (Tenn. 2003). Tennessee Code Annotated §§ 29-26-115, *et seq.*, the codified sections of the Act, gives the common law elements of negligence insofar as they are to be applied to medical malpractice actions. *Gunter*, 121 S.W.3d at 639; *see* T.C.A. § 29-26-115. When a negligence claim arises from injuries resulting from negligent medical treatment, the action is one for medical malpractice. *Gunter*, 121 S.W.3d at 640. The Tennessee Supreme Court has stated that "when a claim

bears a substantial relationship to the rendition of medical treatment by a medical professional, the medical malpractice statute is applicable." *Id.* at 641.

Beginning on October 1, 2008,[4] all plaintiffs asserting medical malpractice claims under the Tennessee Medical Malpractice Act must comply with a notice requirement.[5] This notice requirement provides, in pertinent part:

> Any person, or that person's authorized agent, asserting a potential claim for medical malpractice shall give written notice of the potential claim to each health care provider who will be a named defendant at least sixty (60) days before the filing of a complaint based upon medical malpractice in any court of this state.

T.C.A. § 29-26-121(a)(1). Section 29-26-121(b) provides that if a complaint "is filed in any court alleging a claim for medical malpractice, the pleadings shall state whether each party has complied with [the pre-suit notice requirement] and shall provide such evidence of compliance as the court may require." T.C.A. § 29-26-121(b). The Tennessee Medical Malpractice Act also permits courts to exercise "discretion to excuse compliance with [the pre-suit notice requirement]" for "extraordinary cause shown." *Id.* One court has stated that the purpose of the pre-suit notice requirement is "to provide notice to potential parties and to facilitate early resolution of cases through settlement." *Jenkins v. Marvel*, — F. Supp. 2d —, —, No. 4:08-CV-75, 2010 WL 234723, at *11-13 (E.D. Tenn. Jan 14, 2010).[6]

---

[4] Plaintiffs' filed the complaint on February 27, 2009.

[5] *See* 2008 Pub. Acts, c. 919, § 1; 2009 Pub. Acts, c. 425, § 2.

[6] In determining the purpose of the pre-suit requirements, the *Jenkins* court analyzed two congressional newsletters discussing the purpose of the Tennessee Medical Malpractice Act and compared the Act's provisions to a similar Texas statute regarding medical malpractice liability.

5

In addition to these requirements, the Tennessee Medical Malpractice Act also provides that,

> In any medical malpractice action in which expert testimony is required by § 29-26-115, the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint.

T.C.A. 29-26-122(a). Expert testimony is required under § 29-26-115 except where the act of alleged malpractice lies within the knowledge of ordinary laymen. *See Kenyon v. Handal*, 122 S.W.3d 743, 758 (Tenn. Ct. App. 2003). The certificate of good faith must show that plaintiff or plaintiff's counsel has conferred with one or more competent experts and those expert or experts provided a "signed written statement" confirming that there "is a good faith basis to maintain the action consistent with the requirements of § 29-26-115[.]" T.C.A. §§ 29-26-122(a)(1), (a)(2). Failure to comply with this requirement shall "make the action subject to dismissal with prejudice." *Id.* § 29-26-122(c).

### C. Claims of Medical Malpractice

Plaintiffs have alleged that defendants failed "to recognize and act on an obvious medical emergency[,] "consciously disregard[ed] . . . an inmate's medical emergency[,]" failed "to diagnose and properly treat [Miller] or . . . consult with someone who could properly diagnose and treat her[,]" and "[t]he level of care rendered to [Miller] was below that level of care to be expected of a similarly situated professional hired to assist in the care

---

*See Jenkins*, 2010 WL 234723, at * 12 (discussing the Tennessee Senate Republican Caucus newsletter, the TN Senate Republican Caucus Weekly Wrap, and Texas Civil Practice and Remedies Code § 74.051(a)).

of inmates in a penal facility." [Doc. 1, ¶ 14]. These alleged negligent acts or failures to act, and the alleged failure to comply with the requisite standard of professional medical care by defendant Chapman and defendant Southern bear a "substantial relationship" to the rendition of medical treatment by a medical professional. There are also actions based on medical decisions and opinions—namely, the response of a nurse to a patient exhibiting symptoms of a possible cardiac arrest. *See, e.g., Estate of Hardin v. Broadmore Senior Services, LLC*, 2007 WL 2112670, at *7 (M.D. Tenn. 2007) (finding that the medical malpractice statute applied because "the administration of prescription medications to a mentally ill resident of an assisted living facility is conduct that constitutes or bears a substantial relationship to the rendition of medical treatment by a medical professional"). Accordingly, because such claims relate to alleged medical negligence of a nurse and her employer and because such acts involve medical decisions and opinions, the Court finds that these claims against defendant Chapman and defendant Southern are indeed governed by the Tennessee Medical Malpractice Act.

### D. Notice Requirement

Defendants assert that plaintiffs have failed to comply with both notice provisions of the Tennessee Medical Malpractice Act: failure to give pre-suit notice and failure to assert as such in the complaint. Upon the Court's review, the Court agrees that the complaint does not contain any indication that plaintiffs complied with these requirements. Further, plaintiffs have not responded to defendants' motion to dismiss or offered the Court any "extraordinary cause" for their failure to comply with the requirements. Thus, the Court is

not able to discern any reason why compliance with the notice requirements should be excused. Accordingly, the Court finds that plaintiffs have failed to comply with the pre-suit notice requirement of the Tennessee Medical Malpractice Act.

  E. **Certificate of Good Faith**

Defendants also assert that the medical malpractice claims asserted in this case are such that will require expert testimony and plaintiffs have failed to attach a certificate of good faith from a competent expert as required by the Tennessee Medical Malpractice Act. As stated previously, the Court agrees that several of plaintiffs' claims constitute claims governed by the Tennessee Medical Malpractice Act. Specifically, the claims that defendants failed "to recognize and act on an obvious medical emergency[,] " failed "to diagnose and properly treat [Miller] or . . . consult with someone who could properly diagnose and treat her[,]" and "[t]he level of care rendered to [Miller] was below that level of care to be expected of a similarly situated professional hired to assist in the care of inmates in a penal facility." [Doc. 1, ¶ 14]. Such claims, regarding the standard of care utilized by a nurse, a medical professional, and her allegedly erroneous decision in diagnosing, responding to, and treating a cardiac arrest, are not within the knowledge of ordinary laymen and the Court agrees that such claims will require expert testimony. *See, e.g., Patterson v. Arif*, 173 S.W.3d 8, 12 (Tenn. Ct. App. 2005) (finding, in the context of a motion for summary judgment, that expert testimony regarding the plaintiff's medical malpractice claim was necessary when the plaintiff suffered a stroke, was taken to a hospital, and was left

unattended on a cot). Accordingly, the Court finds that plaintiffs have failed to comply with the certificate of good faith requirement under the Tennessee Medical Malpractice Act.

### F. Effect of Noncompliance with the Tennessee Medical Malpractice Act

Federal district courts, in considering similar pre-suit notice requirements in other state medical malpractice statutes, have held that such requirements are substantive law to be applied in federal diversity cases. *See, e.g., Curry v. High Springs Family Practice Clinic & Diagnosis Center, Inc.*, No. 1:08-cv-00008-MP-AK, 2008 WL 5157683, at *9 (N.D. Fla. Dec. 9, 2008) ("Federal courts typically consider pre-suit notice requirements to be substantive laws, rather than procedural laws, for *Erie* analysis."); *Redmond v. Astrazeneca Pharmaceuticals, LP*, 492 F. Supp. 2d 575, 577-78 (S.D. Miss. 2007) (ruling that Mississippi's pre-filing notice requirement for medical malpractice actions is substantive law). In addition, similar to the pre-suit notice requirement, district courts within the Sixth Circuit have held that the requirement of a state law certificate or affidavit of good faith in regard to state law medical malpractice claims is also substantive law that applies in diversity cases. *See, e.g., Nicholson v. Collins*, No. 1:09cv137, 2009 WL 4147884, at *3 (S.D. Ohio Nov. 23, 2009) (holding that an Ohio law requiring medical malpractice claims to be accompanied by an affidavit of merit from an expert witness was substantive law to be applied in a diversity case); *Lee v. Putz*, No. 1:03-CV-267, 2006 WL 1791304, at *4 (W.D. Mich. June 27, 2006) (holding that Michigan's affidavit of merit statute was substantive law to be applied in a diversity case). The Court agrees with the principles articulated by these

9

courts and finds that the requirements of the Tennessee Medical Malpractice Act are substantive law to be applied in a diversity case such as this case.

In addition, as discussed *supra*, in a case considering a plaintiff's failure to comply with the notice requirement of the Tennessee Medical Malpractice Act, a district court analyzed the requirement, noting that it was intended to serve the purpose of providing "notice to potential parties and to facilitate early resolution of cases through settlement." *Jenkins*, 2010 WL 234723, at *11-13. While the *Jenkins* court ultimately concluded that the plaintiff's failure to comply with the notice requirement did not mandate dismissal of the plaintiff's medical malpractice claims, this finding was based in part on the fact that the plaintiff had satisfied the other pleading requirement, the filing of a certificate of good faith. *Id.* at *12-13. Moreover, the *Jenkins* court noted that the plaintiff had essentially complied with the intent and purpose of the notice provisions because prior to the enactment of the Tennessee Medical Malpractice Act, the plaintiff had filed his complaint and had then taken a voluntary dismissal, re-filing the complaint following the enactment of the Act. *Id.* at *10-13. The *Jenkins* court held that the purposes behind the pre-suit notice requirement were satisfied because the defendants had actual notice of the plaintiff's intent to bring the claims. There was no such notice in this case and no certificate of good faith.

Accordingly, the Court finds that plaintiffs have failed to comply with the pleading requirements for medical malpractice claims as required by the Tennessee Medical Malpractice Act. Specifically, plaintiffs did not give pre-suit notice of their intent to bring medical malpractice claims, did not state as such in the complaint, and did not file a

certificate of good faith. Thus, to the extent plaintiffs have alleged claims of medical malpractice against defendant Chapman and defendant Southern, these claims will be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

### III. Conclusion

For the reasons stated herein, defendants Karen Chapman, R.N. and Southern Health Partners, Inc.'s Motion to Dismiss [Doc. 21] is hereby **GRANTED** and plaintiffs' medical malpractice claims are hereby **DISMISSED** for failure to state a claim under the Tennessee Medical Malpractice Act, T.C.A. §§ 29-26-115, *et seq*.

IT IS SO ORDERED.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE