UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| FAYE MILLER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 3:09-CV-85 |
| | ) | (SHIRLEY) |
| V. | ) | |
| | ) | |
| MONROE COUNTY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the undersigned pursuant to 42 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 36]. Now before the Court is the Defendants' Motion for Summary Judgment [Doc. 47]. The parties appeared before the Court on January 25, 2012, to address the Motion for Summary Judgment and other motions pending in this matter. Attorney Roy Steve Merritt was present representing the Plaintiffs, and Attorney Jonathon Taylor was present representing the Defendants.

For the reasons stated herein, the Court finds that the Motion for Summary Judgment **[Doc. 47]** is well-taken, and it will be **GRANTED**.

# I.      EVIDENCE BEFORE THE COURT

The Court will first establish those documents that it has considered in evaluating the request for summary judgment.  The Court has considered the following timely filed documents: the Motion for Summary Judgment [Doc. 47]; supplied excerpts of the Deposition of Faye Miller [Doc. 47-1]; supplied excerpts of the Deposition of Gage Bright [Doc. 47-2]; supplied excerpts of the Deposition of Felisha Cochran [Doc. 47-3]; supplied excerpts of the Deposition of Karen Chapman [Doc. 47-4]; the Monroe County Sheriff's Department, Memorandum Regarding Emergency Treatment of Injuries Occurring in the Jail [Doc. 47-5]; Policy and Procedure Manual for Health Services in Jails of Southern Health Partners [Doc. 47-6]; the Affidavit of Jonathon Swann Taylor [Doc. 47-7]; the Memorandum in Support of the Motion for Summary Judgment [Doc. 48]; and the Concise Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment [Doc. 49].  The Court has also considered the arguments of counsel presented at the hearing held January 25, 2012.

The Plaintiffs did not respond in opposition to the Motion for Summary Judgment within the time allotted under the Local Rules of the United States District Court for the Eastern District of Tennessee or the Federal Rules of Civil Procedure.  The Motion for Summary Judgment was filed December 20, 2011, and the Plaintiff's time for responding expired on January 13, 2012.  See E.D. Tenn. L.R. 7.1(a); Fed. R. Civ. P. 6(d), 5(b)(2)(E).  The Plaintiffs filed their Memorandum in Opposition to Defendants' Motion for Summary Judgment [Doc. 59], on January 24, 2012, less than twenty-four hours before the hearing on this issue.  Two days after the hearing, the Plaintiffs filed two additional documents – the Notice of Filing of Deposition of David Saxon [Doc. 60], along with the entire deposition, and a Response to Motion for Summary

Judgment, [Doc. 61]. Both of these documents were filed without first requesting leave to file out of time. The Plaintiffs do not dispute that their filings were not timely.[1]

Pursuant to Local Rule 7.2, "Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought." Notwithstanding and out of an abundance of caution, the Court has considered the Plaintiff's filings in making its decision.

## II. FACTS

The Plaintiffs' claims in this case arise from the time period in which the Plaintiffs' decedent Trena Rena Miller ("the Decedent") was a state prisoner at the Monroe County Jail ("the Jail"). The Defendants have presented their version of the facts, which have been adopted by the Plaintiffs.[2] These facts are as follows:

The Decedent began having chest pains at 3:30 a.m. on February 28, 2008, and she was treated by Nurse Karen Chapman ("Nurse Chapman") at approximately 8:15 a.m. Nurse Chapman is a registered nurse and was an employee of Southern Health Partners at the time of this incident. Southern Health Partners was under a contract with Monroe County to provide medical services for the Monroe County Sheriff's Department at the Jail. Nurse Chapman and Southern Health Partners were both Defendants in this action until May 4, 2010, when they were voluntarily dismissed by the Plaintiffs. Nurse Chapman had been assigned to the Monroe County jail for approximately four to five months on February 28, 2008. Nurse Chapman's primary job responsibility was to provide health care to the inmates at the Jail.

---

[1] On February 1, 2012, the Plaintiffs made a third filing without leave to file out of time. [Docs. 63, 64]. The materials contained in this filing are not related to the Court's analysis herein.

[2] Plaintiffs state that they adopt the facts as stated by the Defendants, except that they seek a single addition to the facts. The addition is: "Dr. David Saxon, an emergency room physician is of the opinion that the failure of defendants to have the deceased, Trina Miller's medical records readily available to medical personnel and to have a heart [defibrillator] available in the area where inmates were housed contributed to her death." [Doc. 59 at 1 (internal citation omitted)]. This statement is not a fact; it is an opinion or assertion. The Court will consider it, along with the other assertions of the parties and opinion evidence, in its analysis.

3

During the time of her service at the Monroe County jail, Nurse Chapman had "clinical pathways" from Southern Health Partners that she followed to treat symptoms and complaints from inmates. A copy of the clinical pathway that was used to treat the Decedent and the Decedent's Inmate Sick Call Slip from February 28, 2008 have been provided to the Court, along with a copy of Nurse Chapman's notes outlining her treatment of the Decedent on February 28, 2008. It was Southern Health Partner's policy to address medical emergencies immediately and ensure that every inmate who was injured received an immediate examination and appropriate treatment. Pursuant to Southern Health Partners' contract with Monroe County, Nurse Chapman was on call at the Jail twenty-four hours per day.

Nurse Chapman first encountered the Decedent on February 28, 2008 at approximately 8:15 a.m., after arriving at the Jail for her regular scheduled shift. When Nurse Chapman arrived at the Jail, Officer Samantha Hampton met her at the door and immediately informed her of the Decedent's condition. Nurse Chapman also found the Decedent's Inmate Sick Call Slip in her in-box upon her arrival. Nurse Chapman responded by asking Officer Samantha Hampton to bring the Decedent to the Jail's medical area immediately so that she could examine and treat the Decedent. The Decedent was the first inmate that Nurse Chapman saw on February 28, 2008.

The Decedent presented with complaints of chest pain, burns all the way down her right arm, nausea, and vomiting. The Decedent's blood pressure was 180 over 117. Based on her personal observations of the Decedent at 8:15 a.m., Nurse Chapman determined that it was not necessary to call an ambulance to transport the Decedent to the hospital. The Decedent told Nurse Chapman that she had instructed the Monroe County officer on duty at 3:30 a.m. not to call Nurse Chapman.

4

After encountering the Plaintiff and pursuant to Southern Health Partner's policy and procedure, Nurse Chapman telephoned Nurse Deborah Stanley, ("Nurse Stanley"), her supervisor and advised Nurse Stanley of the Decedent's complaints. Nurse Stanley instructed Nurse Chapman to monitor the Decedent and suggested that Nurse Chapman treat her for anxiety. Immediately thereafter, Nurse Chapman treated the Decedent for anxiety pursuant to Southern Health Partner's clinical protocol. In monitoring the Decedent's progress, Nurse Chapman noted that the Decedent appeared to be calming down after being treated with Vistaril. Her blood pressure had gone down to 142 over 90. After treating the Decedent for anxiety, Nurse Chapman sent the Decedent back to her jail cell to rest.

Nurse Chapman followed protocol and continued to treat the Decedent for anxiety after the Decedent explained that she had received disturbing news that a family member almost killed the Decedent's niece the day before. At approximately 9:00 a.m., Nurse Chapman brought the Decedent back to the medical area to check her vital signs again. At 9:00 a.m., the Decedent's blood pressure was 170 over 100, and the Decedent's vital signs were otherwise stable. By 9:05 a.m., the Decedent's blood pressure had again decreased to 140 over 90. At 9:20 a.m., Nurse Chapman was called to the Decedent's cell. When Nurse Chapman arrived at the Decedent's cell, the Decedent was sitting in her bed. She complained of severe pain. At that time, the Decedent's blood pressure was 140 over 92.

Nurse Chapman noted that the Decedent's initial complaints about pain in her arm were isolated to the right arm. Further, Nurse Chapman noted that the Decedent's blood pressure was not considered "really high" at this time especially considering the disturbing news that the Decedent had learned the night before. Nurse Chapman also noted that the Decedent's blood pressure was fluctuating which lead her to believe that she was responding to the treatment for

anxiety. Nurse Chapman believed the Decedent's condition did not support a diagnosis of a heart attack at that time.

At approximately 9:25 a.m., Nurse Chapman called Nurse Stanley to inform her of The Decedent's vital signs. At about the same time, Nurse Chapman was called back to the Decedent's cell. After rushing to the Decedent's cell, Nurse Chapman found the Decedent lying on the floor. Nurse Chapman entered the jail cell, found that the Decedent was not breathing and had no pulse, and instructed the officer with her to call 911. Nurse Chapman administered cardiopulmonary resuscitation until emergency medical services ("EMS") arrived. The Decedent was breathing when EMS transported her to the hospital. The Decedent died at the University of Tennessee Medical Center on February 28, 2008.

During the four or five months that Nurse Chapman worked at the Jail, she had only treated the Decedent for stomach problems and sinus infections prior to February 28, 2008. During the thirteen months that the Decedent was incarcerated at the Jail for aggravated arson and failure to appear, she never made any complaints of chest pains prior to February 28, 2008. While The Decedent was never treated for heart problems during her incarceration, she apparently informed Nurse Chapman on the morning of February 28, 2008 that she had an enlarged heart with leaky valves. Nurse Chapman was not aware of any heart problems before the morning of February 28, 2008.

III.    STANDARD

The standard for granting summary judgment is familiar to the Court and the parties. Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the

affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." "In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party." Banks v. Wolfe Cnty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003).

The burden of establishing there is no genuine issue of material fact lies upon the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 330 n.2 (1986).


## IV.      ANALYSIS

For the reasons stated below, the Court finds that the pleadings, depositions, and other evidence in the record show that there is no genuine issue of material fact in this case and that the Defendants are entitled to judgment in their favor as a matter of law.

### A.      Plaintiffs' Claim Under 42 U.S.C. § 1983

The Plaintiffs' claim in this case is somewhat difficult to label. The Plaintiffs allege that the Defendants "breached their duty demonstrating a negligent and/or reckless disregard for the consequences so as to affect the health of Trena Miller[, the Decedent] . . . . [Doc. 1 at 4]. They allege that the "actions of the Monroe County authorities in charge were a violation of the inmate's civil rights under § 1983 of the United States Code." [Doc. 1 at 5]. While the nature of the Plaintiffs' claim is not clear from the pleading, the Plaintiffs have proceeded as though they have brought an action for deliberate indifference under 42 U.S.C. § 1983. The Court will address the claim accordingly.

### B.      The Remaining Defendants

The only defendants remaining in this case are: Bill Bivens, Sheriff of Monroe County, Tennessee; Officer Samantha Hampton; and Monroe County, Tennessee.

The claim against Sheriff Bill Bivens, in his official capacity, mirrors the claim made against Monroe County and is therefore redundant. The Supreme Court of the United States has previously held that an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. See Kentucky v. Graham, 473 U.S. 159, 165 (1985). The Court of Appeals for the Sixth Circuit has concluded that official-capacity suits should be dismissed where the same claims are also brought against the county. See Jackson v. Shelby County Gov't., 2008 WL 4915434, at *2 (6th Cir. Nov. 10, 2008) ("[T]he district court properly granted summary judgment to the defendants on the claims against the sheriff in his official capacity because those claims mirror the claims against the County, and are therefore redundant.").

Thus, as an initial matter, the Court finds that the Plaintiff has pled identical claims against both Sheriff Bill Bivens, in his official capacity, and Monroe County, Tennessee. Because these claims mirror one another, the Court finds that they are redundant, and Sheriff Bivens shall be **GRANTED** summary judgment in his favor on all claims pending against him.

Therefore, the Plaintiffs' claim under 42 U.S.C. § 1983 remains pending against only Officer Samantha Hampton and Monroe County, Tennessee.

## C.    Deliberate Indifference

Pursuant to 42 U.S.C. § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

In the case of a failure to prevent harm to a prisoner, the constitutional violation alleged is one of failure to protect against infliction of "cruel and unusual punishments," pursuant to the Eighth Amendment to the Constitution of the United States.

To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a party must "prove that [state actors] acted with 'deliberate indifference' to a substantial risk of serious harm." Woods v. Lecureux, 110 F.3d 1215, 1222 (6th Cir. 1997). The test for "deliberate indifference" has both an objective and subjective component. See Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 2000). The objective component requires the existence of a "sufficiently serious" medical need. Farmer v. Brennan, 511 U.S. 825 (1994). The subjective element requires "an inmate to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.'" Blackmore, 390 F.3d at 895 (quoting Bargery, 207 F.3d at 867). This requires the prison official to have acted with a state of mind similar to recklessness. Farmer, 511 U.S. at 836. An inmate must also prove that the official "disregard[ed] that risk by failing to take reasonable measures to abate it." Id. at 847.

In this case, the Court finds that, even making all reasonable inferences in the Plaintiffs' favor, the evidence could not support a judgment in the Plaintiffs' favor. The Court finds that the undisputed evidence supports finding that a "sufficiently serious" medical need existed, thus, satisfying the objective component of the test for deliberate indifference. The evidence, however, will not support a finding that a prison official acted with a state of mind similar to recklessness in denying medical care.

The Plaintiffs have identified three facts in this case that they contend support finding that the prison officials had a sufficiently culpable state of mind in denying medical care to the Decedent: (1) the six-hour delay in undertaking proper medical care for a heart attack, (2) the

failure to have the Decedent's medical records readily available to Nurse Chapman, and (3) the failure to have a heart defibrillator located near the inmates. The Court will address each of these alleged indicators of deliberate indifference in turn.

First, the Court finds that the six-hour delay in undertaking the proper medical care for the Plaintiff's condition was precipitated by the Plaintiff's refusal of the treatment offered to her. Nurse Chapman testified that the Decedent told her that she had refused offers by the officers at the Jail to call Nurse Chapman. Instead, the Decedent elected to see Nurse Chapman when she arrived for her regular shift. [Doc. 47-4 at 5]. As Nurse Chapman explained, "It was at her request that I was not called in the middle of the night." [Doc. 47-4 at 10]. She noted, "[The Decedent] was one of the kinder inmates to me and – if an inmate can care about a jail nurse – that was her reason for not, so it was at her request that I was not called in the middle of the night." [Doc. 47-4 at 10].

The Decedent exercised her right and discretion to decline the medical care offered to her, out of consideration for Nurse Chapman. There is no evidence in the record to undermine this testimony, nor does the evidence include any hint that the decision to decline medical attention was coerced or not of the Decedent's own free will. Under these circumstances, the Decedent's decision to decline medical care cannot support a finding of deliberate indifference.

Second, the Plaintiffs' assertion that the Decedent's medical records were not readily available to Nurse Chapman is not supported by the evidence in the record. At the hearing, Plaintiffs' counsel stated that Nurse Chapman's testimony supported finding that the medical records were not available when needed, but Plaintiffs' counsel was unable to direct the Court to any portion of her deposition where Nurse Chapman stated that the records were unavailable to her. In her deposition, Nurse Chapman noted that the records were at the Jail, [Doc. 47-4 at 3],

and Nurse Chapman explained that she did not look at the available records on the morning of February 28, 2008, because the events unfolded so quickly. [Doc. 47-4 at 8].

The testimony in the record does not indicate that the Decedent's medical records were unavailable or inaccessible, nor does the evidence support a finding that any officer or official at the Jail withheld the records from Nurse Chapman. Nurse Chapman's decision not to look at the records, under these circumstances, does not constitute deliberate indifference on the part of the officers at the Jail. The records appear to have been readily available if they were requested.

Finally, the Plaintiffs argue that the Defendants' failure to have a heart defibrillator near the inmates constituted deliberate indifference. At the hearing, the Court asked counsel for the Plaintiff to direct the Court to the basis for this allegation. Counsel noted that Nurse Chapman stated a defibrillator was available in the front office, not in Nurse Chapman's office. Nurse Chapman testified that regardless of whether there was a defibrillator available she was not leaving the Decedent once the Decedent was on the floor in cardiac arrest. [Doc. 47-4 at 13].

Again, the Court finds that neither the Jail, its personnel, nor any official on behalf of the County denied the use of a defibrillator. Instead, the evidence in the record demonstrates that the defibrillator was available. It was not used based simply on the circumstances. Nurse Chapman began cardiopulmonary resuscitations immediately, and the Decedent began to breathe again on her own. [Doc. 47-4 at 7]. The defibrillator had been made available by Monroe County and appears to have been available for use, if it had been needed. Moreover, as noted by the Defendants, the Plaintiffs have not directed the Court to any regulation or standard of care requiring that a defibrillator be located in every office or room of the Jail.

The fact that a defibrillator was not used does not support a finding of deliberate indifference.

Accordingly, the Court finds that the undisputed facts and evidence in this case could not support finding the subjective component of a claim of deliberate indifference. The Plaintiffs have not directed the Court to any material fact that is disputed, and even taking all reasonable inferences in favor of the Plaintiffs, a jury could not find that the prison officials in this case have "a sufficiently culpable state of mind in denying medical care." <u>Blackmore</u>, 390 F.3d at 895. The Court will, therefore, grant summary judgment in this case in the Defendants' favor.

**D.  State Claims and Remand**

Finally, at the conclusion of the hearing held January 25, 2012, the Court suggested to the parties that, while it was not certain of its decision in this case, the evidence before it indicated that it would be appropriate to grant the Defendants' motion. The Court and parties discussed the Plaintiffs' complaint and the claim(s) presented therein. Counsel for the Plaintiffs indicated that the Plaintiffs "might have" a negligence claim. While the Defendants did not concede that such a claim existed, they did note that their motion was only as to the claim under 42 U.S.C. § 1983. The parties also discussed the possibility of remand. This case was originated in this Court, so remand of the case would not be appropriate. The Court would note that the ruling contained herein relates only to the federal claim under 42 U.S.C. § 1983 brought before the Court. The ruling does not apply to any potential state law claims. Thus, to the extent the Plaintiffs have raised any state law claims, this Court declines to exercise pendant jurisdiction. These claims are **DENIED WITHOUT PREJUDICE**, to their re-filing in state court.

## V.      CONCLUSION

Based on the foregoing, the Court finds that the Defendants' Motion for Summary Judgment **[Doc. 47]** is well-taken, and it is **GRANTED**.  This case is **DISMISSED**.  The Clerk of Court shall enter a judgment consistent with this Memorandum Opinion and Order and shall close this case.

**IT IS SO ORDERED**.

ENTER:

_____s/ C. Clifford Shirley, Jr._
United States Magistrate Judge